FILED by **JA** D.C.

Feb 3, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20067-CR-COOKE/O'SULLIVAN

18 U.S.C. § 371
18 U.S.C. § 982(a)(2)(A)

UNITED STATES OF AMERICA

vs.

LATOYA STANLEY and
JOHNNY PHILUS,

       Defendants.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

#### Overview of the Paycheck Protection Program ("PPP")

1. In or around March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through the PPP. In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

2. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP

loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation to the lending institution showing their payroll expenses; typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

3. A PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan.

4. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

### Overview of the Economic Injury Disaster Loan ("EIDL") Program

5. The EIDL program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

6. The CARES Act also authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19

pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified as having. The advances did not have to be repaid.

7. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

8. EIDL applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

### The Defendants and Relevant Entities

9. **LATOYA STANLEY** was a resident of Miami-Dade County, Florida.

10. **JOHNNY PHILUS** was a resident of Miami-Dade County, Florida.

11. **LATOYA STANLEY** and **JOHNNY PHILUS** lived together and were romantic partners.

12. Dream Gurl Beauty Supply, LLC (hereinafter, "Dream Gurl") was a Florida corporation that was first registered with the Secretary of State of Florida in 2011. **LATOYA STANLEY** and **JOHNNY PHILUS** were both listed as Chief Executive Officers ("CEOs") of the company. Dream Gurl was in inactive status until it filed for reinstatement on or about May 3, 2020.

13. Elegance Auto Boutique, LLC (hereinafter, "Elegance Auto") was a Florida corporation that was first registered with the Secretary of State of Florida in 2011. **JOHNNY PHILUS** was the listed CEO. Elegance Auto was in inactive status until it filed for reinstatement on or about May 1, 2020.

14. Bank 1 was a federally insured national bank based in Utah.

15. Bank 2 was a federally insured national bank based in North Carolina with branches nationwide.

16. Bank 1 and Bank 2 were SBA-approved lenders and participated in the PPP as lenders to small businesses.

17. Company 1 participated in the PPP as a non-bank lender as well as an entity that connected applicants with other lenders. Small businesses seeking PPP loans could apply through Company 1 for PPP loans. Company 1 subsequently partnered with various banks, including Bank 1, to disburse the loans.

## CONSPIRACY TO COMMIT WIRE FRAUD
### (18 U.S.C. § 371)

From in or around May 2020, through in or around August 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHNNY PHILUS and
LATOYA STANLEY,**

4

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the United States Attorney, to commit certain offenses against the United States, namely, wire fraud, that is, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

18.     It was a purpose of the conspiracy for the defendants and their conspirators to unlawfully enrich themselves by obtaining COVID-19 disaster relief related loan proceeds under false and fraudulent pretenses, including by making false statements about the number of employees and payroll of businesses that the defendants controlled, in an effort to obtain funds from the SBA and certified lenders participating in SBA programs.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

19.     In or around May 2020, **JOHNNY PHILUS**, **LATOYA STANLEY**, and their co-conspirators submitted and caused the submission of online PPP applications, using interstate wires, to Company 1, on behalf of Elegance Auto and Dream Gurl, in which **PHILUS** and **STANLEY** falsely certified that all representations in the applications were true.

20. In the respective PPP loan applications for Elegance Auto and Dream Gurl, **JOHNNY PHILUS**, **LATOYA STANLEY**, and their conspirators made false and fraudulent representations regarding the number of employees and payroll for these businesses, and submitted false and fraudulent purported tax records in support thereof. For example, in the PPP application submitted on behalf of Elegance Auto, **PHILUS** claimed to be the CEO and that Elegance Auto had 29 employees with a monthly payroll of $215,330. In similar fashion, in the PPP application submitted on behalf of Dream Gurl, **STANLEY** claimed to be the CEO and that Dream Gurl had 18 employees with a monthly payroll of $121,144. Contrary to these representations, as **STANLEY** and **PHILUS** then and there well knew, neither Elegance Auto nor Dream Gurl had any employees or monthly payroll at that time.

21. As a result of their false and fraudulent loan applications, **JOHNNY PHILUS**, **LATOYA STANLEY**, and their co-conspirators caused Bank 1, a partner of Company 1, to disburse hundreds of thousands of dollars in PPP funds to **STANLEY** and **PHILUS**. Specifically, approximately $538,325 in PPP funds were disbursed to **PHILUS** as a result of the false and fraudulent PPP application for Elegance Auto, and approximately $302,860 in PPP funds were disbursed to **STANLEY** as a result of the false and fraudulent PPP application for Dream Gurl.

22. **JOHNNY PHILUS** and **LATOYA STANLEY** opened accounts at Bank 2 for Elegance Auto and Dream Gurl, for the purpose of receiving proceeds from the PPP fraud scheme.

23. After receiving the PPP loan funds, **JOHNNY PHILUS**, **LATOYA STANLEY**, and their co-conspirators sought to launder the proceeds by using a third-party payroll processor to distribute the funds to individuals that **PHILUS** and **STANLEY** claimed were employees, but who were, in fact, friends and family members.

24. In or around June 2020, **JOHNNY PHILUS, LATOYA STANLEY**, and their co-

conspirators also submitted and caused the submission of false and fraudulent applications for EIDL loans. Specifically, **PHILUS** submitted and caused the submission of an EIDL application in which **PHILUS** falsely and fraudulently claimed to be a farmer with ten employees, whose farm produced an annual income of approximately $400,262. **STANLEY** submitted and caused the submission of an EIDL application in which **STANLEY** falsely and fraudulently claimed to be a farmer with five employees, whose farm produced an annual income of approximately $899,000.

25.     Based on the fraudulent representations in the EIDL loan applications submitted by **JOHNNY PHILUS**, **LATOYA STANLEY**, and their co-conspirators, the SBA approved the loans and sought to disburse approximately $150,000 to **PHILUS**, and approximately $137,500 to **STANLEY**.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object and purpose thereof, at least one conspirator committed and caused to be committed in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.     On or about May 6, 2020, **LATOYA STANLEY** opened a new bank account at Bank 2 for Dream Gurl to use for receipt of PPP fraud proceeds.

2.     On or about May 6, 2020, **JOHNNY PHILUS** opened a new bank account at Bank 2 for Elegance Auto to use for receipt of PPP fraud proceeds.

3.     On or about May 7, 2020, **JOHNNY PHILUS** and his co-conspirators caused the submission of a PPP application to Company 1 on behalf of Elegance Auto, via interstate wire, through an online portal.

4.     On or about May 14, 2020, **LATOYA STANLEY** and her co-conspirators caused the submission of a PPP application to Company 1 on behalf of Dream Gurl, via interstate wire, through an online portal.

5.     On or about June 18, 2020 **JOHNNY PHILUS** and his co-conspirators caused the submission of an online application, via interstate wire, to the SBA for an approximately $150,000 loan from EIDL program.

6.     On or about June 18, 2020 **LATOYA STANLEY** and her co-conspirators caused the submission of an online application, via interstate wire, to the SBA for an approximately $150,000 loan from the EIDL program.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
### (18 U.S.C. § 982(a)(2)(A))

1.     The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **LATOYA STANLEY** and **JOHNNY PHILUS**, have an interest.

2.     Upon conviction of Title 18, United States Code, Section 371, as alleged in this Information, any defendant so convicted shall forfeit to the United States any property, real or personal, which constitutes, or is derived from, proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

3.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(2)(A) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

DANIEL KAHN
ACTING CHIEF
FRAUD SECTION, CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

_____ For
LOUIS MANZO, TRIAL ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

**Latoya Stanley and Johnny Philus**

_____Defendant._____/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division**: (Select One)
- ✓ Miami    __ Key West
- __ FTL     __ WPB    __ FTP

New defendant(s)            Yes ✓   No ___
Number of new defendants    2
Total number of counts      2

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect    _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                           (Check only one)

   I     0 to 5 days        ✓                 Petty       ____
   II    6 to 10 days       ____              Minor       ____
   III   11 to 20 days      ____              Misdem.     ____
   IV    21 to 60 days      ____              Felony      ✓
   V     61 days and over   ____

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   Yes
   If yes: Magistrate Case No.    20-mj-03470-AOR
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of    Arrested on August 26, 2020- not in custody
   Defendant(s) in state custody as of    _____
   Rule 20 from the District of    _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ____    No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ____    No ✓

_____
Louis Manzo
Trial Attorney
Special Bar ID # A5502685

*Penalty Sheet(s) attached

REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** LATOYA STANLEY

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) Years' Imprisonment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

**Defendant's Name:** JOHNNY PHILUS

**Case No:**

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) Years' Imprisonment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| Johnny Philus, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____          _____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| Latoya Stanley, | ) | |
| | ) | |
| *Defendant* | ) | |

**WAIVER OF AN INDICTMENT**

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*